```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                          SOUTHERN DIVISION

3
     UNITED STATES OF AMERICA
4

5                          Government.

6         v.                          Case No. 10-20346

7    ANTHONY POPE,
     DEMONDRE LEVELLE MARTIN
8    MICHAEL DEON DAVIS,
     DEAUNTE LORENZO PATRICK,
9    ELRIC0 LAQUAN WELCH,

10
                           Defendants.
11   _____/

12

13                        MOTION HEARING

14

15         BEFORE THE HONORABLE GERALD E. ROSEN
                United States District Judge
16         733 US Courthouse & Federal Building
                231 Lafayette Boulevard West
17                   Detroit, Michigan
                Wednesday, November 17, 2010
18

19   APPEARANCES:

20
             JOHN O'BRIEN
21           JEANINE JONES
             Assistant United States Attorneys
22           231 W. Lafayette Blvd.
             Detroit, MI 48226
23           On behalf of the Government.

24   To Obtain a Certified Transcript:
     Carol S. Sapala, RMR, FCRR, CSR
25   313.961.7552
     www.transcriptorders.com
                    Usa v Pope, et al 10-20346
```

1

2

3     APPEARANCES (continuing):

4

5

6            DOUGLAS MULLKOFF
              402 W. Liberty
7            Ann Arbor, MI 48104
              On behalf of Defendants Pope and standing
8            in for Attorney Tholen representing
              Defendant Welch.
9
              SANFORD SCHULMAN
10           500 Griswold Street
              Detroit, MI 48226
11           On behalf of Defendant Patrick.

12           MARK MAGIDSON
              2110 Penobscot Building
13           Detroit, MI 48226
              On behalf of Defendant Martin.
14
              MARIA MANNARINO
15           431 Gratiot
              Detroit, MI 48226
16           On behalf of Defendant Davis.

17

18

19

20

21

22

23

24

25

                      Usa v Pope, et al 10-20346

1

2                      C O N T E N T S

3     IDENTIFICATION                           PAGE

4     _____

5

6     WITNESSES

7     None.

8

9     Defendant Patrick's Renewed Request
      for 404(b) and 609 Evidence                 6
10
      Defendant Pope's Motion for Discovery      10
11
      Defendant Martin's Motion for Discovery    12
12
      Defendant Patrick's Motion to Disclose
13    Grand Jury Transcripts and Identity of
      Informant                                  13
14
      Defendant Welch's Motion to Dismiss        14
15
      Defendant Martin's Motion to Dismiss       16
16
      Defendant Patrick's Motion to Sever        18
17
      Defendant Davis' Motion in Limine          20
18

19

20    Certificate of Court Reporter              23

21

22

23

24

25

                  Usa v Pope, et al 10-20346

1                    E X H I B I T S

2

3        _____

4    IDENTIFICATION              MARKED      RECEIVED

5

6

7                   None  Marked

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                   Usa v Pope, et al 10-20346

```
 1              Detroit, Michigan
 2              Wednesday, November 17, 2010
 3              12:55 p.m.
 4         THE LAW CLERK:  Calling case number 10-20346,
 5    United States of America versus Annie Eugene Pope,
 6    Demondre Martin, Michael Deon Davis, Deaunte Lorenzo
 7    Patrick and Elrico Laquan Welch.
 8         THE COURT:  Good afternoon.
 9         Appearances, starting with the government.
10         MR. O'BRIEN:  John O'Brien on behalf of the United
11    States.
12         MS. JONES:  Jeanine Jones on behalf of the United
13    States.
14         THE COURT:  From the defense?
15         MR. MULLKOFF:  Douglas Mullkoff.  I represent
16    Mr. Pope; standing in for Mr. Welch for David Tholen.
17         MR. SCHULMAN:  Sanford Schulman on behalf of
18    Deaunte Patrick.
19         MR. MAGIDSON:  Mark Magdison on behalf of Demondre
20    Martin, defendant two, seated to my left.
21         MS. MANNERINO:  Afternoon.
22         Maria Mannarino on behalf of Michael Davis, defendant
23    number three, who is seated to my left.
24         THE COURT:  All right.  So the record should
25    reflect several things.
```

Motion for 404(b) and 609 Evidence

1    First, Mr. Tholen was not able to be with us, but he

2  did participate by phone in the conference that I had with

3  counsel in chambers and indicated that Mr. Mullkoff was --

4  had his proxy to participate in the motion practice here

5  this afternoon.

6    Beyond that, I want to take -- we have a number of

7  different motions scheduled for today.  And I want to take

8  what I would consider to be the more readily resolvable

9  ones first, those being the discovery motions, because I

10  think we can make some progress on those pretty quickly.

11    Let me talk, first, about the renewed request for

12  404(b) and 609 information.

13    There was also -- I should add, there was a recently

14  filed motion which the government's not responded by

15  Defendant Davis, also for 404.

16    MS. JONES:  We did respond.

17    THE COURT:  You did respond?

18    MS. JONES:  I responded this morning.

19    THE COURT:  Oh.  Better late then never.

20    MS. JONES:  Technically, I had 14 days.

21    THE COURT:  At any rate, even without the benefit

22  of the government's response, I think I can probably

23  deal with these.

24    The government argues that some of the 404(b)

25  information, particularly prior convictions relating to

Usa v Pope, et al 10-20346

Motion for 404(b) and 609 Evidence

1   drug trafficking or drug activity of these defendants,

2   should be admissible on the issues of intent, motive,

3   plan, preparation.

4        As I shared with counsel in chambers, it has always

5   been the practice of this Court when it comes to 404(b)

6   issues of this nature, prior specific instances of

7   conduct, whether convicted or not, conduct that is offered

8   on the issue of intent, recognizing the government does

9   have the burden of proving intent as an element, but also

10  recognizing that there's a substantial overlap between the

11  use of prior acts to prove intent and the propensity

12  inference under -- which is under Rule 404(b) prohibited.

13       And my general policy is that as to specific

14  instances of conduct offered to prove intent, if the only

15  inference from the prior acts -- if the only inference is

16  that if he did it before, he probably intended to do it

17  again, that falls within the proscribed propensity

18  inference that is not permissible under the rules.

19       Having said that, if the defendants at trial put

20  forth a defense that raises the issue of their intent to

21  participate in this conspiracy, if the defendants

22  affirmatively come forward, and by that I mean either in

23  opening statement, closing argument or by evidence; if

24  they come forward with defenses that raises the question

25  of their intent to participate in this conspiracy, at that

Motion for 404(b) and 609 Evidence

1   point, the 404(b) information becomes relevant on the

2   issue -- at least on the issue of intent.

3       So I guess for purposes of the 404(b) question, the

4   defendants hold the key to whether or not that door gets

5   opened or not.

6       Obviously, that means I can't rule definitively on it

7   here today.  So what I'm going to do is simply deny it

8   without prejudice as to the use of this information.

9       And I want to make sure, though, that the government

10  has -- discloses all possible 404(b) evidence.

11      And I know that the government is aware of its

12  obligation under Rule 404(b) to provide notice of any

13  404(b) activity or action prior to trial.

14      But I'm going to deny the motions without prejudice

15  to the defense to raise it again.

16      And/or for that matter, if the government wishes to

17  request the Court at trial to introduce 404(b) evidence if

18  it believes the defendants have somehow raised the issue

19  by either opening statement or perhaps in cross

20  examination or through proofs, I'll leave it to the

21  parties to raise that issue once there's an evidentiary

22  context for which the Court can decide it.

23      Similarly, 609 evidence.  Defendant Patrick, I

24  believe, has 609 questions.

25      I almost never decide 609 issues until I've seen what

Usa v Pope, et al 10-20346

Motion for 404(b) and 609 Evidence

1  the evidence looks like so that I can perform the

2  balancing act or the balancing test under Rule 609(a)(1);

3  that's particularly true where there are issues of the

4  defendant himself potentially testifying.

5      The question of the identity of the government

6  informant.  I don't think that Defendant Martin or the

7  other defendants have joined in or have come forward yet

8  with -- Mr. O'Brien?

9      MR. O'BRIEN:  All of that information was mailed

10  out a little over week ago, judge.

11      THE COURT:  Well, the government's -- this is a

12  C.I --

13      MR. O'BRIEN:  Yes.

14      THE COURT:  -- 58?

15      MR. O'BRIEN:  Yes.

16      THE COURT:  You've disclosed his identity?

17      MR. O'BRIEN:  Yes.

18      THE COURT:  Well, that makes that much more easy

19  to rule on.  Yes?

20      MR. MULLKOFF:  Judge, this would be our motion --

21  Mr. Pope's motion for discovery of the informant's

22  identity which has been joined by a few of the

23  co-defendants.

24      THE COURT:  I thought Defendant Martin had the

25  motion.

Motion For Discovery

1        MR. MAGIDSON:  I can defer to Mr. Mullkoff.

2        THE COURT:  Mr. Mullkoff, since you're standing

3    there.

4        MR. MULLKOFF:  What I'm going to say is --

5        THE COURT:  You've already got what you need,

6    though.

7        MR. MULLKOFF:  We have -- I'm going to confirm

8    that we got information about the informant; his name,

9    his compensation and related information about his

10   criminal history, so I feel that the substance of what

11   we're looking for has been complied with.

12       I also spoke with Mr. O'Brien and have been assured

13   that everything short of grand jury has been given to us.

14       THE COURT:  Does that mean, Mr. O'Brien, that you

15   intend to have CI-85 testify?

16       MR. O'BRIEN:  Yes, sir.

17       THE COURT:  Well, that was going to be my first

18   question.

19       MR. O'BRIEN:  In addition to that, because I'd

20   just like to follow up on a piece of Mr. Magdison's

21   motion or request he and I had been discussing for

22   sometime has to do with the issue of telephone records;

23   telephone calls between the ATF agents, his client,

24   CI-85, Mr. Pope.

25       We ran into a little bit of an issue, judge, because

Motion For Discovery

1    of the date at which -- against which I was subpoenaing

2    records wasn't the trial date with the request of the

3    phone companies, please produce those in advance.

4         Perhaps the attorneys could work it out so they don't

5    have to sacrifice an employee to come testify during the

6    trial.

7         We are in receipt -- at this point I know all the

8    records aren't in yet of over six or 700 pages of records

9    because the agents used their phone for this case, for

10   other cases.  I suspect there's also defendant's wives and

11   whoever on there.

12        We're in the process of sorting all of those phone

13   numbers that are pertinent to this case in a summary form

14   so that the defense has the phone numbers of the

15   incoming-outgoing calls that are specific to the numbers

16   that relate to this case on the agent's calls back and

17   forth to their clients.  That has not been produced.

18        But because we're taking the time to do that, I think

19   the product will be much more useful to both sides and the

20   Court --

21        THE COURT:  That's helpful.

22        How long do you think it will take you to do that?

23        MR. O'BRIEN:  A week for all the records we have

24   now.

25        When I say another week, judge, we're talking about

Usa v Pope, et al 10-20346

Motion For Discovery

1  before Thanksgiving next Wednesday.

2      And then if additional records come in, I do expect a

3  few more, only because there were dates on two of the

4  phone number subpoenas or three of the phone number

5  subpoenas that were seized at the time of the arrest.

6      And the dates were as -- up to the date of arrest

7  started that day of arrest, we got a bunch of records back

8  said there were no calls.  We would expect there would be

9  none.

10     The phones were seized that day.  Now they're going

11  backwards in time into March and February as opposed to

12  forward to November.  But that may take a little bit

13  longer.

14     THE COURT:  Mr. Mullkoff, Mr. Magdison, I assume

15  that answers your motions with respect to confidential

16  informant and production of recordings, notes, *et*

17  *cetera*.

18     Is that right?

19     MR. MAGIDSON:  I believe it addresses the issues

20  we raised with respect to that.

21     THE COURT:  And while you're standing or almost

22  standing, Mr. Magdison, have I answered your questions

23  on the *in limine* motion on 404(b) as well?

24     MR. MAGIDSON:  Thank you, Judge.  We understand

25  your ruling.

Motion to Disclose Grand Jury Transcripts

1    THE COURT:  Defendant Patrick has a motion to

2  disclose grand jury transcripts and identity of

3  witnesses and informants.  This would generally fall

4  within the *Jencks* Act.

5    Let me ask you, Mr. O'Brien.  As you know, my

6  practice is to generally encourage the government to turn

7  over all witness statements, including grand jury

8  testimony, other than in cases involving witness security

9  or a real concern of witness tampering of any sort.

10    Is that a concern here?

11    MR. O'BRIEN:  It is not.

12    I would indicate to the Court, given our decision to

13  call CI-85 at trial, then based on phone records, I

14  indicate an interview with that individual only in an

15  effort to make sure we have all of the information about

16  that.

17    THE COURT:  And the statements from those

18  interviews will be turned over?

19    MR. O'BRIEN:  Absolutely.  That's a report that

20  doesn't yet exist.

21    But anything that's created from here forward, I'll

22  turn over immediately; transcripts, grand jury

23  transcripts, we'll make copies of those.

24    THE COURT:  Satisfactory?

25    MR. SCHULMAN:  I'm satisfied.

Motion to Disclose Grand Jury Transcripts

1      I want to clarify as to our 404(b) and 609, we were

2   simply asking at this point for notice.  If there's any

3   notice, he can provide that.

4      THE COURT:  I've ordered him to give notice.  But

5   I guess it was Defendant Martin who had the substantive

6   404(b).

7      MR. MAGIDSON:  We're satisfied.

8      THE COURT:  Although the guidelines that I've

9   provided certainly goes for all defendants on 404(b).

10      Which brings us to some of the more substantive

11   issues in motions to dismiss.  I want to take those -- I

12   want to take three of them together, because they all

13   really involve the same constellation of legal claims.

14      Defendant Martin's motion to dismiss based on

15   entrapment.

16      Defendant Welch's motion to dismiss for outrageous

17   conduct or entrapment, failure to state a claim.

18      And Defendant Patrick's motion to dismiss on the

19   basis of abandonment.

20      All of these issues would require me to have seen

21   evidence at trial.  Let me take, as an example, the

22   entrapment question.

23      The entrapment question hinges upon whether

24   Mr. Martin or Mr. Welch had any prior predisposition to

25   engage in the conspiratorial conduct alleged in the

Usa v Pope, et al 10-20346

Motion to Dismiss/Entrapment, Outrageous Conduct,
Failure to State a Claim, and Abandonment

1   indictment.

2       Before I could make a determination of that, I would

3   have to see the evidence.  Obviously, to the extent that a

4   defendant may have had prior drug trafficking activity,

5   that would be very probative of whether or not that

6   defendant had any prior predisposition.

7       On the issue of abandonment, I think there are

8   serious factual questions here.  Given, as I understand it

9   the government's contentions and after reviewing the

10   special agents' affidavit, I think that the defendants'

11   conduct in arguably pulling away from following the

12   undercover agent, Jury, is susceptible of a number of

13   different -- susceptible to a number of different

14   interpretations.

15       And for me to find abandonment as a matter of law

16   without any evidentiary context whatsoever, would not only

17   be premature, but inappropriate.  So I'm going to have to

18   deny that motion.

19       It seems to me that abandonment is a very precise

20   term of art in which a defendant has to do more than

21   simply not follow somebody to an alleged meeting site.

22       The defendant has to take affirmative steps to put

23   other co-conspirators on notice, either directly or

24   implicitly that they are no longer part of the conspiracy

25   and have completely abandoned the objectives of the

Motion to Dismiss/Entrapment, Outrageous Conduct,
Failure to State a Claim, and Abandonment

1    conspiracy rather than, perhaps, putting them off for

2    another day.  So I'm going to have to see some evidence

3    before I can even make that.

4        With respect to all three of these motions that I've

5    just delineated, these would be more in the nature of

6    trial motions after the government has completed its

7    proof, if counsel still believes that the government has

8    failed to establish the elements or if counsel continues

9    with its -- with their entrapment defense.

10       So I'm going to deny these motions again without

11   prejudice to raise them again; probably in the context of

12   a Rule 29.

13       Defendant Martin's motion to dismiss based on

14   duplicity in the indictment.  It's an interesting

15   argument.

16       There are certainly a number of different crimes that

17   are alleged within the indictment, but I think the law has

18   now become pretty well settled under *Braverman versus*

19   *United States*, as well as a number of other cases, that

20   the mere fact that there are different crimes alleged as

21   part of a larger conspiracy does not constitute duplicity.

22       Indeed, in almost every -- if you think about it, in

23   almost every charge of conspiracy, there are different and

24   distinct crimes.

25       The typical crime being a conspiracy to distribute

Motion to Dismiss/Entrapment, Outrageous Conduct,
Failure to State a Claim, and Abandonment

 1   narcotics which alleges specific narcotic transactions on

 2   specific days; those allege specific crimes and also

 3   allege a larger conspiracy of which these specific crimes

 4   are part.  That's basically what we have here.

 5       Even though there are allegations which could be read

 6   to allege specific crimes, such as home invasion or

 7   conspiracy with the intent to commit home invasion, those

 8   are all alleged as part of a larger conspiracy crime; and,

 9   therefore, are not subject to a dismissal based on

10   duplicity.

11       I want to hear arguments from Mr. Patrick's attorney

12   on the severance issue and where the prejudice is that

13   would differentiate this from other conspiracy charges in

14   which one defendant has a lesser role.

15       Mr. Schulman, do you want to address that?

16

17       MR. SCHULMAN:  I'll be brief because, obviously,

18   I've articulated those issues in my motions.

19       The summary would be Mr. Patrick's involvement as

20   alleged by the government is at the end of this long book.

21       Now they're introducing a book.  The jury, by that

22   point, will have heard a tremendous amount of information.

23       I understand the conspiracy portion opens the door to

24   the entire book, that's the governments answer in

25   principle.

Motion To Sever

1        But in reality by the time it gets to the last

2   chapter, prejudice is so damaging that it outweighs any

3   kind of argument and persuades juries to think of things

4   that have tied into days and weeks, even months

5   previously.

6        And that prejudice is the focus of the motion as

7   opposed to the idea of the conspirators to allow the door

8   to be wide open.

9        THE COURT:  I'm confident, Mr. Schulman, that you

10  are a well experienced and highly competent criminal

11  defense lawyer who's tried cases before this Court.

12       I'm very confident that you will be able to point out

13  Mr. Patrick's relatively alleged limited role in this and

14  the chronology and time for which it allegedly did occur

15  and perhaps even use that to Mr. Patrick's advantage at

16  trial.

17       As you know, the law is that disparity in the

18  quantities of evidence relating to differing defendants

19  and disparities as to length of time of involvement in a

20  conspiracy, those things are not grounds for severance.

21       There has to be some really, unduly prejudicial

22  aspect to the nature of the evidence from which there

23  would be a taint or spillover that a much lesser involved

24  defendant would suffer before severance -- rather drastic

25  evidence of severance is appropriate.

Usa v Pope, et al 10-20346

Motion To Sever

1        I guess I would say that based upon what I've seen in

2   this case, although Mr. Patrick didn't show up until late

3   in the game and his role was at least as alleged by the

4   government in the special agent's affidavit, that it

5   doesn't provide grounds for severing him out from the

6   trial.

7        This is the old rule of in for a penny in for a

8   point.  Unfortunately, Mr. Patrick, like many other

9   defendants in a conspiracy, is subject to that role.

10       MR. SCHULMAN:  Thank you.

11       THE COURT:  All right.  I think I have now dealt

12  with each of the pending motions.

13       We should put on the record before I -- Mr. O'Brien?

14       MR. O'BRIEN:  I have one question, judge.

15       THE COURT:  Yes?

16       MR. O'BRIEN:  You said you were going to package

17  three of them together and you spoke about abandonment,

18  entrapment --

19       THE COURT:  The three I was packaging together are

20  Defendant Martin's motion to dismiss on entrapment,

21  Defendant Welch's motion to dismiss for outrageous

22  conduct and entrapment, failure to state a claim and

23  Defendant Pope's motion on abandonment.  Those are

24  three I handled separately, the duplicity motion and

25  severance motion.

Usa v Pope, et al 10-20346

Defendant Davis' In Limine Motion

1        Then I handled the discovery motions on Mr. Martin's

2   404(b) *in limine* motions.

3        MR. O'BRIEN:  Thank you.

4        THE COURT:  I've also -- so that the record

5   reflects, I've also handled the more recently filed

6   motion by Mr. Davis on 404(b), the *in limine* motion.

7        MR. SCHULMAN:  Judge, not to interrupt.

8        Is the Court not considering an evidentiary hearing

9   on the abandonment or entrapment?

10        THE COURT:  I don't think an evidentiary hearing

11   would be appropriate here that would effectively

12   require me to make an evidentiary finding that might

13   well be within the province of the jury.

14        MR. SCHULMAN:  Rule 29 requires to use exhaustive

15   resources of a trial as opposed to pretrial.  I

16   understand.

17        THE COURT:  We may have to resolve some resources

18   anyway.

19        MR. SCHULMAN:  Thank you, Judge.

20        THE COURT:  I do want to put on the record the

21   fact that counsel and the Court have agreed that with

22   respect to the trial date that has been set of

23   December 14th, I'm going to adjourn that.

24        And the trial date that is set for Mr. Pope

25   individually, that will go forward.

Usa v Pope, et al 10-20346

1          Mr. Mullkoff, I'd ask you to make sure that you and

2     Mr. Pope have a fulsome discussion of that, the necessity

3     of beginning to prepare.

4          MR. MULLKOFF:  Understood.

5          THE COURT:  We do have the suppression motion on

6     December 13th that's going forward.  Okay?

7          While we're talking about that, I've got a few more

8     minutes.  What does the government anticipate in terms of

9     evidence?

10         MR. O'BRIEN:  Two witnesses, Your Honor.

11         THE COURT:  Two brief witnesses?

12         MR. O'BRIEN:  Yes; be Agent Jury and one of the

13    other agents who was involved in the stop and seizing

14    of evidence from the vehicle.

15         THE COURT:  I'll be very interested to learn at

16    that hearing what the basis for the stop was.

17         Okay?  Anything else?

18         MR. MULLKOFF:  For scheduling purposes, ask if the

19    government -- if the Court would ask the government

20    about the anticipated length of the drug trial on the

21    14th.

22         THE COURT:  Number of witnesses?

23         MR. O'BRIEN:  Potentially four, potentially five.

24         THE COURT:  Four or five; that would include

25    CI-85?

                    Usa v Pope, et al 10-20346

1          MR. O'BRIEN:  He's not part of that trial because

2     none of the charged deliveries are -- involved him.

3          THE COURT:  Good.  I won't ask you how many

4     witnesses you're going put on, Mr. Mullkoff.

5          MR. MULLKOFF:  I'm not prepared to answer that

6     question at this time.

7          THE COURT:  Since I wasn't asking.  Thank you.

8

9               (This hearing concluded at 2:05 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                      CERTIFICATE OF COURT REPORTER

5

6

7

8     I certify that the foregoing is a correct transcript

9     from reported proceedings in the above-entitled

10    matter.

11

12

13

14    s/Carol S. Sapala, FCRR, RMR     December 6, 2010

15

16

17

18

19

20

21

22

23

24

25